IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| PROGRESSIVE GULF INSURANCE COMPANY, | ) ) ) | |
| Plaintiff and Counter-Defendant, | ) ) | |
| v. | ) ) | Civil Action No. 7:18-cv-00293 |
| WILLIAM BURKE, | ) ) | By: Elizabeth K. Dillon United States District Judge |
| Defendant and Counter-Claimant. | ) | |

**MEMORANDUM OPINION**

In this declaratory judgment action, the parties dispute whether Progressive Gulf Insurance Company is obligated to provide insurance coverage for the loss of a yacht owned by William Burke, which sank at its dock on Smith Mountain Lake, behind Burke's house. Burke has also filed a counterclaim, seeking the full amount of coverage available under the insurance policy.

Pending before the court is Progressive's motion for summary judgment (Dkt. No. 18), in which it contends that it has no duty to provide any coverage for that loss because Burke failed properly to winterize the yacht, which was the cause of the damage. As a result of this failure, Progressive argues that at least two specific terms of the policy bar coverage. Because the court agrees that, based on the undisputed facts, at least one of the provisions bars any coverage for the loss here, it will grant plaintiff's motion for summary judgment, declare the rights and obligations of the parties accordingly, and dismiss with prejudice Burke's counterclaim.

I. BACKGROUND

This case falls within the court's diversity jurisdiction because Burke is a citizen of Virginia, Progressive is an Ohio corporation with its headquarters and principal place of business located in Ohio, and the amount in controversy exceeds $75,000.

Progressive's motion for summary judgment set forth a numbered statement of undisputed facts, citing to the record. Although Burke filed a response, it was primarily a two-page summary of Burke's legal position. (Mem. Opp'n to Mot. Summ. J., Dkt. No. 20.) He made no attempt to respond to specific facts or to cite any specific portions of the record, as required by Federal Rule of Civil Procedure 56(c). Thus, the court will deem the facts set forth by Progressive undisputed, *see* Rule 56(e), with a few exceptions. First, while admitting that he deviated from the winterization procedure recommended by the manufacturer, Burke claims that the deviation was "justified by local usage and custom." He claims that he and his son have significant experience maintaining and piloting boats on Smith Mountain Lake and have opined that their winterization process was in accordance with local usage. (Mem. Opp'n to Mot. Summ. J. 1.) He supports this only with a general reference to "statements attached to [Progressive's] motion." (*Id.*) Burke contends that this dispute precludes summary judgment because the relevant policy exclusions referenced in Progressive's brief—according to him—allow for deviation by local custom. The court will address these arguments in context in Section II *infra*.

Because the parties are familiar with the facts and because they are largely undisputed, the court will not discuss them in detail but, instead, simply incorporates pages 2 through 8 of Progressive's memorandum in support of its summary judgment. In this opinion, the court touches only upon the facts significant to its analysis.

**A. The Sinking of the Yacht**

The yacht owned by Burke is a 2006 custom catamaran motor-yacht, the *Calusa Explorer* (the Vessel).[1] The Vessel includes two air conditioning units (the A/C units), which were installed more than ten years ago. According to the reports of Progressive's two experts, the

---

[1] According to the motion for summary judgment, the yacht is registered through "Coast Cat Cruisers, LLC," a Florida limited liability company of which Burke is the only member. (Burke Dep. 32–33, 52, Dkt. No. 19-1.)

Vessel sank because it had not been properly winterized. In particular, neither Burke nor his adult son, Travis—to whom Burke had delegated winterization tasks—properly winterized the A/C units. The manufacturer's instructions for the A/C units required (for a boat that would be stored on the water throughout this region's winter) that all water in the A/C be replaced with antifreeze and that the Vessel's sea cocks be closed.[2] But it is undisputed that neither of these steps were taken. Burke and Travis believed (incorrectly, according to both the manufacturer's instructions and Progressive's experts) that they did not have to winterize that system. Because there was water left in the Vessel's raw-water inlet, when the temperatures stayed low enough, that water froze. It then expanded and caused part of the A/C system called the "strainer bowl" to crack and break free of its mount. That, in turn, allowed lake water entering the Vessel through its open seacock to flow unimpeded into and out of the broken strainer, flooding the Vessel until it sank. The sinking occurred in early January 2018 during the overnight hours.

**B. The Policy**

Approximately one month before the Vessel sank, in December 2017, Progressive issued a "Virginia Boat and Personal Watercraft" insurance policy (the Policy) to Burke. By its terms, the Policy provided coverage for the Vessel through December 2018, including coverage for its storage and use of navigable waters. The Policy was an "Agreed Value Policy," with a coverage limit of $150,000, a figure supplied by Burke as his estimate of the value of the yacht and all belongings on it. There are several portions of the Policy that Progressive relies upon to contend that it has no obligation to cover the losses due to the sinking.

The first is an exclusion from coverage for a loss "that occurs because a covered watercraft has not been properly winterized in accordance with the manufacturer's specifications, subject to

---

[2] A sea cock is "a cock or valve close to a ship's hull for opening or closing a pipe which communicates with the sea." *Sea Cock*, Merriam-Webster, https://www.merriam-webster.com/dictionary/sea%20cock (last visited May 9, 2019).

local customs." (Policy 15, 17, Dkt. No. 1-1.) The second is set forth in a portion of the policy titled "Your Representations to Us Regarding Your Covered Watercraft." It states:

> You represent to us that, at the inception of this policy, your covered watercraft is in seaworthy condition. Violation of this representation will void this policy from its inception.
>
> You further represent to us that you will continue to maintain your covered watercraft in a seaworthy condition and to comply with all federal safety standards and provisions. **This policy does not cover any loss or damages caused by your failure to maintain your covered watercraft in seaworthy condition** or to comply with all federal safety standards and provisions.

(Policy 35.)

In the definitions section of the Policy, it provides:

> 13. "Seaworthy" means fit to withstand the foreseeable and expected conditions of weather, wind, waves, and the rigors of normal and foreseeable use in whatever type of waters a watercraft will be located. For a watercraft to be considered seaworthy, you must (without limitation):
>
>> a. exercise due diligence to properly manage the watercraft;
>> b. comply with all federal safety standards and provisions; and
>> c. follow all customary and manufacturer-recommended maintenance guidelines.

(Policy 3.)

## II. DISCUSSION

### A. Legal Standards

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all

4

reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

Virginia's choice-of-law rules provide that questions with regard to the interpretation of an insurance contract shall be governed by the law of the state where the contract was made. *Factory Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 518 F. Supp. 2d 803, 808 (W.D. Va. 2007) (citing *Lixie v. State Farm Mut. Auto. Ins. Co.*, 469 S.E.2d 61, 63 (Va. 1996)). In Virginia, an insurance policy is made in the state in which the policy was delivered. *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 418 (4th Cir. 2004). Here, Progressive asserts that "Burke is a Virginia resident who applied to Progressive for an insurance policy in Virginia and the Policy was delivered to him in Virginia to insure the Vessel, which was kept and operated within this Commonwealth." (Mem. Supp. Mot. Summ. J. 9, Dkt. No. 19.) Burke does not contend otherwise, nor does he argue for the application of any other law. Thus, the court applies Virginia law in interpreting the Policy's terms.

Under Virginia law, the interpretation of an insurance policy presents a question of law. *Va. Farm Bur. Mut. Ins. Co. v. Williams*, 677 S.E.2d 299, 302 (Va. 2009). Just as with any contract, the court must interpret the policy "by determining the parties' intent from the words they have used in the document." *Id.* When a contested policy term is unambiguous, courts must apply its plain meaning as written. *Id.*

**B. Coverage Under the Policy**

As already noted, Progressive relies on two provisions in the Policy to support its contention that it has no obligation to cover any losses from the Vessel's sinking. The court turns first to the exclusion for any loss "that occurs because a covered watercraft has not been properly winterized in accordance with the manufacturer's specifications, subject to local customs."

5

(Policy 15.) Here, there is ample evidence to suggest that the loss here was caused by a failure to winterize in accordance with the manufacturer's specifications, subject to local customs. Progressive's two experts both have opined that the Vessel was not properly winterized. (*See, e.g.*, Report of Kim MacCartney, CAPT USCGR (Ret.) 4, Dkt. No. 19-9 (pointing out various ways in which the winterization undertaken by Travis did not follow manufacturer's guidelines and, with respect to the A/C units, specifically noting that, "[h]ad these units been properly winterized in accordance with the manufacturer's instructions the strainer never would have frozen and cracked.").)[3] The one marina manager at Smith Mountain lake who was willing to talk with Progressive's expert likewise testified that customary winterization for a vessel in the area included removing all water from systems, lines and fittings and replacing it with antifreeze. (Ryan Report #2, Dkt. No. 19-7, at p. 18.)

In response, Burke and Travis have offered only their own opinions that they followed the local custom at Smith Mountain Lake. The court will assume, without deciding, that Burke's and Travis's own testimony regarding what is the "local custom" would be admissible in some form and that it creates a genuine issue of material fact precluding summary judgment as to the winterization exclusion.

Nonetheless, the second portion of the policy upon which Progressive relies does not contain the same limitations for "local customs." Specifically, that provision states that the policy "does not cover any loss or damages caused by [the insured's] failure to maintain [his] covered watercraft in seaworthy condition . . . ." (Policy 35.) In order to maintain the vessel in a

---

[3] MacCanter's report also notes: "There was no evidence that the vessel was plugged in to shore power at the time of the loss and that, had the vessel's bilge pumps been operable and their batteries kept charged someone may have noticed it gradually sinking or noticed the bilge pumps discharging overboard." (Report 5, Dkt. No. 19-9.) Nowhere, however, does Burke challenge the causation opinions offered by Progressive's experts or Progressive's conclusion that the loss was caused by the failure to winterize and/or maintain the vessel according to manufacturer instructions.

6

seaworthy condition, Burke was required to do three things, and the failure to do any one of them would constitute a failure to maintain the Vessel in a seaworthy condition: "a. exercise due diligence to properly manage the watercraft; b. comply with all federal safety standards and provisions; and c. follow all customary and manufacturer-recommended maintenance guidelines."

Nowhere in those three requirements is an insured's duty limited by "local custom." Indeed, as to the third of these, *both* customary *and* manufacturer-recommended maintenance guidelines must be followed. *Id.* Because is it undisputed that neither Burke nor Travis followed the manufacturer-recommended maintenance guidelines regarding winterization of the A/C units, the vessel was not seaworthy as that term is defined in the Policy. *Cf. Capital Coastal Corp. v. Hartford Fire Ins. Co.*, 378 F. Supp. 163, 1974 A.M.C. 2039, 2047 (E.D. Va. 1974) (noting the general presumption that, when a vessel sinks in calm water, a presumption arises that the vessel was unseaworthy). And because that failure was the undisputed cause of the loss at issue, the loss and damages are not covered by the policy, under its plain and unambiguous terms.[4]

### III. CONCLUSION

For the foregoing reasons, the court will grant summary judgment in favor of Progressive and an appropriate declaratory judgment will be entered. The court also will dismiss with prejudice Burke's counterclaim. An appropriate order will be entered.

Entered: May 10, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[4] Progressive also argues that the Policy was void ab initio because the Vessel was not seaworthy at the time the Policy was issued. In light of its ruling, the court does not address that issue.